[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking a Pre-Judgement Remedy in connection with an ongoing law suit and in particular with regard to counts 3, 4, 5, 6 and 7[1] of the amended complaint thereof. In these counts plaintiff seeks to attach the assets of BFP, Inc, a Belgium corporation licensed to do business in Connecticut and William Bongaerts, personally. the sole or primary shareholder and principal officer and director of BFP, Inc. as well as the other original corporate entities.[2]
Facts which were stipulated to are as follows: Plaintiffs and defendant Beaufurn, Inc. entered into a 3 year commercial lease of the subject premises located in Norwalk commencing August, 1989. On September 19, 1990 Bongaerts applied and obtained from the Secretary of State a certificate of authority for Beaufurn to conduct business in Connecticut: Beaufurn, Inc. took possession pursuant to said lease and abandoned the subject premises on/about February 17, 1991 and plaintiffs were unable to relet same for the remainder of the lease. Beaufurn, Inc. paid no rent from the date of abandonment in February, 1991.
In June, 1991, Bongaerts, as president and secretary of Beaufurn, Inc. cause an amended certificate of incorporation to be filed with the Secretary of State of Delaware which changed the name of Beaufurn, Inc., to "Goodfurniture Corp. [hereinafter referred to as GF]; the principal business of GF was the sale of merchandise.
After hearing on the instant proceeding the court found the following additional facts: Beaufurn, Inc. at all times relevant engaged in the retail sale of furniture. Beaufurn, Inc. commenced doing business in Connecticut in February, 1986. Bongaerts was president, secretary/treasurer and a 99% shareholder of Beaufurn, Inc. Although it vacated the plaintiffs' premises in February, Beaufurn, Inc. continued to operate its furniture business from another location in Norwalk known to the plaintiffs. However, seven months after this removal Beaufurn, Inc. vacated this location leaving them totally devoid of inventory. All merchandise was disposed of. Although Bongaerts testified that 85% of Beaufurn, Inc.'s inventory was held on consignment, there is no other evidence in the record to support that claim. Bongaerts also personally purchased all of Beaufurn, Inc.'s furniture and fixtures. The record is devoid of any corporate authority to dispose of such property. Neither the plaintiffs nor any Beaufurn, Inc.'s creditors received prior notice of any intended disposition of Beaufurn, Inc./GF's inventory. Furthermore, when made aware of Beaufurn, Inc.'s intent to vacate the subject premises, plaintiffs notified Bongaerts of their intent to hold them to the terms of the lease. Plaintiffs were told by Bongaerts that Beaufurn, Inc. was going out of business due to poor business activity and therefore there was no basis to settle any claims relating to the remainder of the lease. However, Bongaerts admitted that after discontinuing business operations in Norwalk any inventory owned by Beaufurn, Inc./GF was distributed to various consignment houses, sold and the proceeds used to pay off creditors. No part of these proceeds were ever paid over to the plaintiffs.
At about the same time Beaufurn, Inc. abandoned the subject premises, it also changed its name to GF and sold its proprietary interest in the name "Beaufurn" and its good will to Bongaerts for $300. Shortly thereafter GF discontinued business operations in Norwalk. Corporate minutes authorizing this transaction were unsigned and stated no business reason for the action taken; not was any business reason for this change established by the evidence. However, Bongaerts testified that the purpose in selling the name to him was to allow BFP, Inc. to use it. Thereafter Bongaerts permitted BFP, Inc. to use this proprietary name it its business operations, but received no compensation for its us from BFP, Inc. In early 1991 Beaufurn, Inc./GF terminated business operations in Norwalk. A few months thereafter BFP, Inc., with Bongaerts acting as its president and major shareholder, began selling furniture out of a warehouse in Bridgeport. On or about May 30, 1991, Bongaerts had filed for and obtained a Certificate of Authority to conduct business as a corporate entity known as BFP, Inc. BFP, Inc. did not advertise under its own name, but instead, used the trade name "Beaufurn". This trade name was registered in Norwalk in late 1992 by Bongaerts acting on behalf of BFP, Inc. as its president. Although BFP, Inc. was using this trade name in Bridgeport, the record does not indicate that this CT Page 6720 trade name was ever registered in Bridgeport. BFP, Inc. did not conduct any merchandising operations in Norwalk.
Ordinarily, an individual cannot be personally held for the debts of his corporation even where he is the principal shareholder, officer and director thereof. However this limitation on personal liability may be eliminated where is a showing that such person exercises complete domination aver the policy and business practices to such an extent that the corporate entity had no separate mind, will or existence of its own with respect to the transactions in question. Zaist v. Olson, 154 Conn. 563, 575 (1967). Furthermore, this corporate veil of limited liability will be lifted where the plaintiff shows such a units of interest and ownership between the separate legal entities in question that the independence of the corporation under attack had in fact based to or never existed. ID.
Finally, it must be shown that the resulting control or exercise of power must have been intended to be used to perpetrate some fraud or wrong upon or to avoid some legal duty to an attaching creditor, and that an injustice would result if the individual or corporate entity were allowed to rely on the fictional corporate existence. ID at 576.
The plaintiff in this matter has satisfied this court by the evidence presented that there is a probability that these elements exist and consequently that the claims set forth in counts 3, 4 and 5 have probable validity.
It is clear from the facts found that Bongaerts exercised complete domination over each of the corporate entities in question with regard to the transactions in question. It is also obvious from the facts that there was no genuine effort to observe corporate formalities in changing the name of the lessee corporation or disposing of all of the corporate assets of Beaufurn, Inc. To the contrary, there appears to be a concerted scheme by the defendant Bongaerts to remove himself and BFP, Inc. from the notice and reach of the plaintiffs while knowing that the plaintiffs had not abandoned their claims regarding the lease and at the same time conducting business as usual all to the prejudice of the plaintiffs. That such scheme was his is quite apparent from the secretive and cavalier manner in which he carried out the scheme without either observing corporate formalities or the laws relating to bulk sales or recordation of fictitious trade names while treating each of these entities as if they were his personal possessions all in order to resume business operations free of the financial disabilities imposed by the outstanding liability to the plaintiffs. Moreover, there were not apparent legitimate business/corporate purposes recorded or unrecorded for selling all of the assets of Beaufurn, Inc., including its name and good will. Nor was any reason offered into evidence other than the isolated statement in the unsigned corporate minutes that it was in the corporation's interest that it change its name. And, although Bongaerts paid value for the name and good will of Beaufurn, Inc., the record id devoid of any evidence that he extracted any value for the subsequent use thereof by BFP, Inc. Nor was there any legitimate business purpose apparent of record for the existence of GF. In fact the record is devoid of any business operations undertaken by Goodfurniture after the name change.
It is apparent from the evidence that the defendant Bongaerts was the only person determining the policy and making the business decisions for the corporations all of which were clearly designed not for the benefit of those corporations, but for his own personal benefit to avoid and escape a valid obligation to the plaintiff.
The court is of the opinion that under these circumstances it would be inequitable to recognize the existence of the corporate fiction of each of these corporate entities so as to prevent the plaintiffs from satisfying their out of the available assets of the defendants Bongaerts and BFP, Inc. Accordingly, the corporate veil should be pierce as it related to the transactions in question.
With regard to the 6th count, the court concludes plaintiffs have sustained its burden of establishing the probably validity of its CUTPA claim that Bongaerts, acting as the alter egos of these other entities, failed to comply with section 35-1 CGS by failing to register the proper trade name in Norwalk or to register it at all in Bridgeport, in which it had removed its business operations which violation constitutes a per se violation of section 42-110b(a) CGS.
Finally, as to count 7, the court concludes that there is probable validity to the claim that Beaufurn, Inc., also known as Goodfurniture Corporation and BFP, Inc., by virtue of the acts of Bongaerts acting as the alter ego of each of the aforementioned corporate entities made a bulk transfer of all or substantially all of the assets of Beaufurn, Inc. — whether it be the 15% — 20% that Bongaerts claims or the entire inventory of the Norwalk store at the time of "going out of business" which was accomplished without notice to plaintiff, a significant creditor. The court further concludes that such action is in probable violation of the CT Page 6721 Connecticut Bulk Sales act. 42a-6-101 et seq. CGS.
Accordingly, for all of the foregoing reasons this court concludes that a pre-judgement remedy in the amount of $62,000[1] should be and is hereby GRANTED in favor of the plaintiffs.
BY THE COURT
Melville, J.